*F. G. Cook,* for the plaintiff.

---

GEORGE E. JACOBS *vs.* ARTHUR E. WHITNEY.

Middlesex.    January 12, 1910. — May 17, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Will,* Effect of foreign will.  *Conflict of Laws,* Interpretation and effect of foreign will.  *Devise and Legacy,* What estate.  *Partition.  Words,* "Vested," "Then living," "Under lawful age and without issue," "And."

Statement by MORTON, J., of the rule of law that the will of a person who dies testate and domiciled in another State, leaving property in this Commonwealth, shall be interpreted according to the law of the State where the testator was domiciled at the time of his death, and of some of the exceptions thereto.

A testator by his will devised certain real estate in this Commonwealth to trustees with directions that his brother might have the use of it during his life, that after the death of the brother one third of the income therefrom should be paid to the brother's wife during her life " and the remaining two thirds . . . shall be divided among the children of my said brother, in the proportion of three eighths thereof to his son A., and five eighths thereof equally to his other children, then living during the lifetime of their mother ; and immediately after the decease of " the brother and his wife "I direct that the said real estate . . . shall be vested in the children " of the brother " in the same proportions as above mentioned as to the income thereof.  If any of the said children be then deceased, under lawful age and without issue, the surviving children . . . to take the share of said decedent in the same proportions but if either of the said children be then deceased leaving lawful issue him or her surviving, such issue shall take and if more than one divide equally among them, the part or share his her or their deceased parent would have taken if then living."  At the time of the testator's death, the brother and his wife and six of their children were living.  One of the children died before the father and mother and before reaching the age of twenty-one, intestate and without issue.  Another, F., after having been adjudged insolvent and after his property had passed to his assignee in insolvency under the laws

of this Commonwealth, died without issue and of more than lawful age during the lifetime of his father and mother. The assignee in insolvency conveyed what interest he had to one who, after the death of the testator's brother and his wife, petitioned for a partition of the real estate in question. *Held*, that the interest of the children of the testator's brother in the real estate in question vested at the time of the testator's death, and therefore that the petitioner received from F.'s assignee in insolvency an interest in common which gave him a right to a partition.

MORTON, J. This is a petition for the partition of land in Winchester of which one Asa Whitney died seised in fee simple in 1873. The question in the case relates to the construction of the sixth article of his will. At the time of his death he was domiciled in Philadelphia and the will was drawn and executed there. It was duly admitted to probate in Philadelphia in 1874, and in 1875 was admitted to probate as a foreign will in the Probate Court for Middlesex County in this State, and the trustees named in the will were duly appointed and qualified by that court. The judge of the Superior Court by whom the case was heard* ruled and found, subject to the respondent's exceptions, that the petitioner was entitled to partition, and at the request of the respondent reported the case to this court. If his rulings and findings are correct, judgment is to be entered that partition be made; otherwise the case is to be disposed of as law and justice may require.

By the sixth clause of his will the testator gave and devised to his sons George, John R. and James S. Whitney and the survivors and survivor of them, all his real estate and property in Winchester, "in trust nevertheless . . . at their discretion to permit my said brother Joel Whitney to use occupy and enjoy the said real estate for and during all the term of his natural life. . . . In case Esther Whitney wife of my said brother Joel shall survive her husband my will is and I direct that one third of the clear yearly value or rental of said real estate . . . shall be paid half yearly to the said Esther Whitney, for and during all the term of her natural life for her own use absolutely and the remaining two thirds of said rent . . . shall be divided among the children of my said brother, in the proportion of three eighths thereof to his son Arthur E. Whitney, and five eighths thereof equally to his other children, then living during

---

* *Sanderson, J.*

the life time of their mother; and immediately after the decease of said Joel Whitney and wife I direct that the said real estate . . . mentioned in this article, shall be vested in the children of the said Joel Whitney, in the same proportions as above mentioned as to the income thereof : if any of the said children be then deceased, under lawful age and without issue, the surviving children of my said brother to take the share of said decedent in the same proportions but if either of the said children be then deceased leaving lawful issue him or her surviving, such issue shall take and if more than one divide equally among them, the part or share his her or their deceased parent would have taken if then living."

Joel and his wife were both living at the death of the testator and had six children then living. Of these Evelyn died during the lifetime of her father and mother and of her brother, Fred M. Whitney, upwards of twenty-one, intestate and without issue. Fred M. Whitney, under whom the petitioner claims title, died in 1890, during the lifetime of his father and mother, also intestate and without issue, and of more than lawful age. In August, 1889, he was adjudged insolvent by the court of insolvency of Suffolk County, and all his interest in the property in question passed to his assignee in insolvency from whom it came by mesne conveyance to the petitioner.*

The question is whether, as contended by the petitioner, the interest which Fred M. Whitney took under the will of Asa Whitney was a vested remainder, or whether, as contended by the respondent, it was contingent on his surviving his father and mother, or, what amounts to the same thing so far as the result in this case is concerned, whether if vested, it was subject to be divested by his death without issue during the lifetime of his parents. We do not understand the respondent to contend that, if vested, it did not pass to the petitioner, or that the petitioner is not entitled in that event to partition.

The judge ruled as requested by the petitioner that the will should be construed according to the law of Pennsylvania, as it was interpreted at the time and place where it was drawn and ex-

---

* Joel Whitney died in 1893, and his wife died in 1900. The original petition in this case was filed on February 13, 1909, and was amended on May 21, 1909.

ecuted; and so far as the question was one of fact the judge must be taken, by his ruling and finding that the petitioner was entitled to partition, to have found that the law of Pennsylvania was as contended by the petitioner, and that the remainder was vested and not contingent.   We assume in favor of the respondent, but without so deciding, that the form of the report is such that all questions in relation to the proper construction of the will, however arising, are open to him.   See *McCurdy* v. *McCallum*, 186 Mass. 464.

The testator having been domiciled in Philadelphia when the will was drawn and executed, and dying there, the will must be interpreted as it would be interpreted there, unless the circumstances under which it was executed or the nature of the will itself requires a different construction.   *Brandeis* v. *Atkins*, 204 Mass. 471.   *McCurdy* v. *McCallum*, 186 Mass. 464.   *In re Fergusson's will*, [1902] 1 Ch. 483.   *Ford* v. *Ford*, 70 Wis. 19.   *Keith* v. *Eaton*, 58 Kans. 732.   Wharton, Conflict of Laws, (3d ed.) § 599 a.   This rule applies with full force and effect to personal property wherever situated.   The construction and effect given to the will by the courts of the testator's domicil are everywhere recognized as binding.   *Brandeis* v. *Atkins*, 204 Mass. 471.   *Enohin* v. *Wylie*, 10 H. L. Cas. 1.   *In re Trufort*, [1887] 36 Ch. D. 600.   This is upon the theory that the situs of such property is supposed to be where the owner has his domicil, though for certain purposes, no doubt, the actual situation of the property may be taken into account.   *Frothingham* v. *Shaw*, 175 Mass. 59. With regard however to real property situated in another jurisdiction, another rule applies.   While the will is presumed in the absence of anything to the contrary to have been drawn in accordance with the law of the testator's domicil and will be interpreted accordingly, its effect and validity in respect to the disposition of real property so situated or the creation of any interest therein will depend upon the *lex rei sitæ*.   *Brandeis* v. *Atkins, supra.   De Vaughn* v. *Hutchinson*, 165 U. S. 566.   *Robertson* v. *Pickrell*, 109 U. S. 608.   *White* v. *Howard*, 46 N. Y. 144.   *West* v. *Fitz*, 109 Ill. 425.   *Ford* v. *Ford, supra.   Alexander* v. *Waller*, 6 Bush, (Ky.) 330.   *Atkinson* v. *Staigg*, 13 R. I. 725.   Dicey, Conflict of Laws, (Moore's ed.) 516.   Redfield on Wills, (2d ed.) 398, § 8.   Thus in *Sewall* v. *Wilmer*, 132 Mass.

131, a power of appointment which included real estate situated in this State was held to have been properly executed according to the law of this Commonwealth though it was not according to the law of Maryland where the person executing it was domiciled. If, therefore, the ruling of the court is to be understood as meaning that if the remainder was vested according to the law of Pennsylvania as it was at the time when the will was executed, it must be regarded as vested here also, the ruling was not strictly correct. But the error was immaterial for the reason that whether the law of Pennsylvania or of this State applies, and whether, if the law of Pennsylvania applies, it is to be ascertained as of the date of the execution of the will or as of a later period, the remainder was, we think, as the trial court found and ruled, a vested and not a contingent remainder.

The testator devised the property in trust for the benefit of his brother Joel during his life. After the brother's death one third of the income was to be paid over half yearly during her life to the brother's wife if she survived him, and the remaining two thirds were to be divided among the brother's children in the proportion of three eighths to Arthur and five eighths equally among the other children then living during the mother's lifetime. Upon the death of the brother and his wife the property was to vest in the brother's children in the same proportions as directed in regard to the payment of the income. That is, as we construe the word "vested" as used in the will in this connection, the children were then to come into possession of the property. If any of them should then be deceased under lawful age and without issue, the survivors were to take the share of the decedent in the same proportions as were provided in regard to the income, but if either of them was deceased leaving issue him or her surviving, such issue were to take the share which the deceased parent would have taken if then living. This is the scheme of the will so far as it relates to the matter in controversy and it manifestly contemplates, it seems to us, that upon the termination of the trust and of the life estates the property shall go to Joel's children, and that if any of them shall have deceased in the meantime, under age and without lawful issue, his share shall go to his brothers and sisters, and that if he has deceased leaving lawful issue surviving him such issue

shall take it. There is nothing uncertain or contingent about those who are to take, or what they are to take, or when they are to take. Those who are to take are Joel's children, and the time when they are to take is at the testator's death when the will goes into effect, and, inasmuch as the property is subject to life estates in favor of Joel and his wife, what they take is manifestly the remainder to which they become absolutely entitled at the moment of the testator's death subject only to the contingency of dying intestate and without issue before the period when they are to come into possession arrives, in which event the share which they or their issue would otherwise have taken goes to their surviving brothers and sisters subject to a like contingency on their part if they die under lawful age and without issue. See *Pike* v. *Stephenson*, 99 Mass. 188; *Bosworth* v. *Stockbridge*, 189 Mass. 266; *Richards* v. *Burbank*, 201 Mass. 253; *Wade* v. *Wade*, 203 Mass. 1; *Frame* v. *Stewart*, 5 Watts, 433, 434; *Manderson* v. *Lukens*, 23 Penn. St. 31; *Womrath* v. *McCormick*, 51 Penn. St. 504; *Snyder's estate*, 180 Penn. St. 70; *Carstensen's estate*, 196 Penn. St. 325, 328; *In re Phillips' estate*, 205 Penn. St. 504; *Hood* v. *Pennsylvania Society*, 221 Penn. St. 474, 476.

The respondent contends, as we understand him, that inasmuch as the proportions into which the remainder is to be divided are the same as those into which the income is to be divided, and the income is to be divided three eighths to Arthur and five eighths to the "other children then living," it follows that the proportions into which the remainder is to be divided cannot be the same unless the remainder is also divided amongst the children "then living." But the words "then living," in the connection in which they are thus used, apply to the division of the income only. The proportions referred to in the final division amongst the children are the fractional divisions of three eighths and five eighths without any limitation to the children then living. This is the natural construction. During the mother's life the testator provides that the income shall be divided amongst the children then living, but when it comes to the final disposition of the property he makes, as we already have observed, no such limitation.

We see no reason for giving to the words " under lawful age

and without issue" any other than their obvious meaning. There is no reason to doubt that the contingency intended to be provided for is that expressed by the language used, and we see nothing requiring that the word "and" should be construed as meaning "or."

*Judgment to be entered that partition be made.*

*E. W. Crawford,* for the petitioner.

*John Chipman Gray,* (*S. Robinson* with him,) for the respondent.

