JOHN D. SPRECKELS AND ADOLPH B. SPRECKELS *v.* CLAUS A. SPRECKELS AND RUDOLPH SPRECKELS, TRUSTEES UNDER THE WILL AND OF THE ESTATE OF CLAUS SPRECKELS, LATE OF SAN FRANCISCO, STATE OF CALIFORNIA, DECEASED, CLAUS A. SPRECKELS, RUDOLPH SPRECKELS, EMMA C. FERRIS, JOHN FERRIS, SCHUMAN CARRIAGE COMPANY, LIMITED, ASSOCIATED GARAGE, LIMITED, HAWAIIAN STAR NEWSPAPER ASSOCIATION, LIMITED, GUSTAV BIORKMAN, J. H. SCHNACK, W. O. BARNHARDT, ALBERT C. KIECHLER, M. T. MARSHALL, JOHN NEILL.

ERROR TO CIRCUIT COURT, FIRST CIRCUIT.

ARGUED MAY 12, 13, 1913.                    DECIDED MAY 26, 1913.

ROBERTSON, C.J., PERRY AND DE BOLT, JJ.

WILLS—*devise of real property construed according to* lex rei sitae.
    The construction and effect of a devise of real property situated in a jurisdiction other than that of the testator's domicil is to

be determined in accordance with the law of the jurisdiction where the land is situated.

SAME—*devise of property in trust to divide and convey—vested interests.*

A testator devised and bequeathed all his estate to trustees in trust to pay the net income thereof to his wife during her natural life; and upon her death (or upon the death of the testator in case he should survive his wife) to divide the estate into three equal parts when one of such parts should be forthwith assigned, transferred, set over and delivered by them to his son C., same to be and become his absolutely and forever, and another of such parts similarly to his son R.; and to pay the net income from the remaining equal third part of the estate to his daughter E. during her natural life, and upon her death to pay over the principal to E.'s children and grand children. The wife survived the testator and the sons and daughter survived their mother. Held, that the trustees took the legal title to the entire estate in trust for the purposes stated in the will, and that the will imposed upon the trustees the active duty, upon the death of the widow, to divide the estate into three equal parts and to assign, transfer and convey one of such parts to each of the two sons; that the testator did not intend that the equitable interests of the sons were to remain contingent until the division and transfer of the property by the trustees but that those interests were to become vested at least upon the death of the widow; that the fact that the estate was a large one which it might take a long time to divide would not prevent those interests from vesting in the sons in undivided shares subject to the division and transfer by the trustees; and that the will did not violate the rule against perpetuities.

SAME—*effect of different constructions—trust void in domicilary jurisdiction.*

Where a trust to convey real estate created by will is valid according to the law of Hawaii and is operative as to real estate situated in Hawaii, it will not be held ineffective or void so as to cause the property to pass as intestate estate upon the ground that such a trust is not permitted by the law of California, in which State the testator resided and wherein the bulk of his property was situated, and the will has been construed by the supreme court of that State as having given the beneficiaries legal estates by direct devises. In Hawaii such a trust will operate

according to the intention of the testator notwithstanding the construction placed upon the will by the California court.

## OPINION OF THE COURT BY ROBERTSON, C.J.

In an action to quiet title to certain lands situate in the city and county of Honolulu, Territory of Hawaii, wherein the defendants-in-error were plaintiffs and the plaintiffs-in-error were defendants, the following facts were agreed upon:

"That Claus Spreckels, late of San Francisco, State of California, named in the complaint herein, died in San Francisco, of which place he was a resident, on December 26, 1908. That at the time of his death he owned in fee simple all the property, being Lots 1, 2 and 3, described in the complaint herein. That he left surviving him a widow, Anna C. Spreckels, and five children, viz: John D. and Adolph B. Spreckels, plaintiffs herein, Claus A. and Rudolph Spreckels, and Emma C. Ferris, defendants herein, and no other children or issue of deceased children. That said widow, Anna C. Spreckels, died on the 15th day of February, 1910. That no dower interest in said property was ever admeasured. That all of said five children are now surviving. That Claus Spreckels left a will, a copy of which is annexed hereto, which has been duly admitted to probate in the State of California, and to ancillary probate in the Territory of Hawaii. That no distribution of any of said property described in said complaint has yet been made under said will. That Anna C. Spreckels left a will, a copy of which is hereto annexed, which has been duly admitted to probate in the State of California and to ancillary probate in the Territory of Hawaii. That said plaintiffs, John D. and Adolph B. Spreckels, have not in any way transferred or incumbered, and that they now own whatever interests, if any, in said property they respectively received or acquired, or became entitled to, as heirs of said Claus Spreckels or otherwise at or subsequent to the death of said Claus Spreckels. That Claus Spreckels, at the time of his death, owned an estate valued in round numbers at $10,000,000. of multiform character, one-half of which consisted of real property situated in California. That the said Claus A. Spreckels, at the time of the death of said Claus Spreckels, had, and at the present time has, issue, to wit, a daughter living; that the said Rudolph Spreckels, at the time of

the death of said Claus Spreckels, and at the present time has, issue, to wit, a son and two daughters living; and that the said Emma C. Ferris was at the time of the death of said Claus Spreckels, without issue, and at the present time has issue, to wit, a daughter living. That the law of California, viz: the Civil Code provides: Upon the death of the husband, one-half of the community property goes to the surviving wife, and the other half is subject to the testamentary disposition of the husband, and in the absence of such disposition, goes to his descendants, equally, if such descendants are in the same degree of kindred to the decedent; otherwise, according to the right of representation; and in the absence of both such disposition and such descendants, is subject to distribution in the same manner as the separate property of the husband. In case of the dissolution of the community by the death of the husband, the entire community property is equally subject to his debts, the family allowance, and the charges and expenses of administration."

The will of Claus Spreckels is as follows: "I, Claus Spreckels, a citizen of the State of California, and a resident of the City of San Francisco in said state, now present in the city, county and state of New York, being of sound and disposing mind, and not under restraint or undue influence, do make, publish and declare this to be my Last Will and Testament, hereby revoking all other Wills by me made.

"First: I declare that all the estate, whereof I may die possessed, is the community property of my wife, Anna Christina Spreckels, and myself.

"Second: I hereby give, devise and bequeath unto my Trustees hereinafter named, all my estate, real, personal and mixed, of every nature, kind and description, wherever situate and however held, which is or may be subject to my testamentary disposition at the time of my death, to have and to hold the same, in trust, nevertheless, for the uses and purposes, with the powers and in the manner hereinafter mentioned, namely, to wit: (a) To pay over the net annual income thereof to my wife during the term of her natural life. (b) Upon the death of my said wife, or upon my death if she be not then surviving, to divide said estate into three equal parts, when one of said parts shall be forthwith assigned, transferred, set over and delivered by my said Trustees to my son Claus A. Spreckels, and the same shall be and become his absolutely and forever, and

another of said equal third parts shall be forthwith assigned, transferred, set over and delivered by my said Trustees to my son Rudolph Spreckels, and the same shall be and become his absolutely and forever.   (c) To pay over the net annual income derived from the remaining equal third part of my estate to my daughter, Emma C. Ferris of Kingswood, England, wife of John Ferris, during her natural life, upon her receipt without anticipation, and the same shall not be liable for her debts. Upon the death of my said daughter Emma, to pay over the principal of said one-third part of my estate, with all accumulations of the income therefrom, to her children then living, and so that each child shall receive an equal share thereof, and the same shall become his or hers absolutely and forever. Children of her deceased children shall, however, take the share which the parent would have taken had he or she survived my said daughter, and the same shall be divided between said children share and share alike.   Upon the death of my said daughter without child, children or grand children her surviving, the Trustees shall pay over the principal of said one-third part of my estate, with all accumulations of income therefrom, to my said sons Claus A. Spreckels and Rudolph Spreckels, share and share alike, and the same shall become theirs absolutely and forever.

"Third : If my said son Claus A. Spreckels shall not be living at the time of my death or surviving me be not living at the time of my wife's death, then all the legacies and devises given to him by this Will shall go to his issue, to him in lawful wedlock born, share and share alike, and the same shall be and become theirs absolutely and forever.   If my said son Rudolph Spreckels shall not be living at the time of my death, or surviving me be not living at the time of my wife's death, then all the legacies and devises given to him by this Will shall go to his issue, to him in lawful wedlock born, share and share alike, and the same shall be and become theirs absolutely and forever.

"Fourth :  I make no provision in this Will for my sons John D. Spreckels and Adolph B. Spreckels for the reason that I have already given them a large part of my estate.

"Fifth :  I hereby authorize and empower my Trustees hereinafter named, to invest and re-invest the trust funds hereinbefore provided for in any securities which are approved by

my said wife and by them during her lifetime, in case she survive me, and after her death, in any securities which said Trustees deem best, whether the same are or are not investments to which Executors and Trustees are by law limited in making investments, and to change or vary investments from time to time as they may deem best. I authorize and empower my Executors and Trustees hereinafter named, to hold and continue in their discretion, any security in which any of my property may be found invested at the time of my death, my intent being that they shall be absolved and discharged from the absolute legal duty of converting my estate into money, and that they shall not be liable for any shrinkage in value by reason of the exercise of the discretion hereby reposed in them.

"Sixth: I authorize and empower my Executors and Trustees hereinafter named in their discretion to sell and dispose of any and all of my property, real or personal, wherever situate and however held, either at public or private sale, and at such time or times and upon such terms as may seem to them meet and advisable, and to give to the purchaser or purchasers of any of my said property all deeds, bills of sale and other muniments of title which may be expedient or necessary.

"Seventh: I nominate, constitute and appoint my sons Claus A. Spreckels and Rudolph Spreckels as Executors of this my last Will and Testament, and as Trustees of any and all trusts herein created, and I direct and request that no bond or other security be required of them as such Executors or Trustees, or in any capacity in which they may act under this Will."

Anna C. Spreckels, by her will, devised and bequeathed her estate to her sons Claus A. and Rudolph and her daughter Emma C. Ferris, share and share alike, and stated that she had omitted making any provision for her sons John D. and Adolph B. for the reason that her deceased husband had, prior to his death, given and advanced to them a large part of his estate, and for other reasons satisfactory to her.

The circuit court, jury waived, sustained the plaintiffs' contention that the will created a trust to divide and convey, and held that the interests given by clauses "(b)" and "(c)" of the second paragraph of the will were neither direct devises nor vested interests but were contingent interests which were not

to become vested until at the completion of the division of the estate into three equal parts by the trustees and that as such division was not required to be made within twenty-one years after the death of the testator's widow, the trust was void under the rule against perpetuities. The plaintiffs claimed title to two-fifths of the land in dispute upon the theory that on the death of their mother the title to the land passed as intestate property to the five children, and judgment for the plaintiffs was entered in the court below in accordance with their claim.

The will of Claus Spreckels was considered and its validity pronounced by the supreme court of California in *Estate of Spreckels,* 162 Cal. 559. It was there held that the estate was devised to the trustees in trust to pay the income to the testator's wife for life; that upon her death one-third of the estate was devised to Claus A. Spreckels, or, if he should be not then living, to his issue, and another one-third to Rudolph Spreckels, or his issue; that the remaining third would rest with the trustees upon trust to pay the income to Mrs. Ferris during her life, and upon her death that third will go to her children and grand-children, or to Claus A. and Rudolph; that the devises of the equal third parts to Claus A., Rudolph, and the trustees for Mrs. Ferris and her children, were direct devises of undivided legal estates which became vested on the death of Mrs. Spreckels; that the will did not create a trust to convey or partition real estate; and that there was no undue suspension of the power of alienation. The court found it unnecessary to consider the contention that even if the direction to divide imposed upon the trustees the duty to partition the estate into three portions of equal value, the will nevertheless contains direct devises by implication to the persons intended by the testator to be his ultimate beneficiaries, or to examine the point that the supposed invalidity of the trust with respect to the realty carries with it, as a part of a single scheme, the failure of the provisions in so far as they affect personal property.

Spreckels v. Spreckels, 21 Haw. 556.

The first point which requires our attention is with reference to the decision of the supreme court of California and what influence it should have upon the decision of this court. On behalf of the plaintiffs-in-error it is urged that this court, though not obliged to follow that decision, ought to follow it because it is intrinsically sound and just. We have profound respect for the able supreme court of California and hold its opinions in high regard, and were it not for the important fact that the law of California materially differs from the law of this Territory with reference to trusts to convey real property we should hesitate long before departing from the line of reasoning adopted by that court in construing the will in hand. In this Territory there are no statutory provisions corresponding to those of the Civil Code of California which have been held to prevent the creation of a trust to convey real property to beneficiaries (*Estate of Fair*, 132 Cal. 523), and which the present defendants-in-error, before the California court, contended would render nugatory the provisions of clause "(b)" of the second paragraph of this will. Being confronted with the statute the supreme court of California felt obliged, as it intimated in its opinion (p. 569), to make a keen "search for words which might save the testamentary attempt from failure." A careful reading of the opinion inclines us to think that the court would have held that the intention of Claus Spreckels was to create a trust to divide and convey real estate were such a trust lawful in California. The court said (p. 568), "But wherever the court has been called upon to consider a will which contained, in addition to words which, standing alone, would be deemed to create a trust to convey, some expression which might be operative to pass the title directly from the testator to the beneficiary, the ruling has been that the will was to be construed as making a direct devise, and such devise has been given effect, in disregard of the words importing an invalid trust," and again (p. 573), "But when words which by themselves import an unlawful trust to convey are joined with other

words which are sufficient to operate as a direct devise of the interest, the direct devise is not destroyed by the fact that the testator may have attempted to provide in addition for an unlawful method of passing title through trustees." And an underlying principle upon which the court proceeded is shown by the quotation made from the case of *Estate of Heywood*, 148 Cal. 184, 191, that, "It is only when the language actually used by the testator will admit of no other reasonable construction than that it declares (creates) an invalid trust that a court will declare this to be its effect." But as to the real estate situate in Hawaii, the law of this Territory governs the transfer of its title. The construction and effect of this will, and the validity of its provisions with respect to the land in dispute must be determined with reference to the law of Hawaii, and this court must examine the will to ascertain the intention of the testator and give effect to that intention if it be not repugnant to the law of this jurisdiction irrespective of what may have been held in California. *DeVaughn v. Hutchinson*, 165 U. S. 566, 570; *Clarke v. Clarke*, 178 U. S. 186, 190; *Ball v. Phelan*, 23 L. R. A. N. S. (Miss.) 895, 907; *Peet v. Peet*, 229 Ill. 341, 348; *Campbell-Kawananakoa v. Campbell*, 152 Cal. 201, 206. In *Jacobs v. Whitney*, 205 Mass. 477, 480, it was said, "The testator having been domiciled in Philadelphia when the will was drawn and executed, and dying there, the will must be interpreted as it would be interpreted there, unless the circumstances under which it was executed or the nature of the will itself requires a different construction. * * * * This rule applies with full force and effect to personal property wherever situated. * * * * With regard however to real property situated in another jurisdiction, another rule applies. While the will is presumed in the absence of anything to the contrary to have been drawn in accordance with the law of the testator's domicil and will be interpreted accordingly, its effect and validity in respect to the disposition of real property so situated, or the creation of any interest therein will depend upon the *lex rei*

*sitae."* The qualification to the rule noticed in *Ball* v. *Phelan,* and applied in some cases cited by the plaintiffs-in-error, that the courts of the jurisdiction where the property is situated, in construing a will made at the testator's domicil, in another jurisdiction, will adopt a settled judicial meaning which the courts of the jurisdiction of domicil have given to technical words therein so that such meaning has become a rule of property in that jurisdiction, does not apply here. The questions presented do not involve the construction of technical words which have a settled meaning in California. They are broader questions which concern the construction and validity of clause "(b)" as a whole, and the effect on all of the provisions of the will relating to the period after the death of Mrs. Spreckels of the rulings made by the supreme court of California. In dealing with these questions we are required to have in mind the general rules of construction which, when applied to wills requiring construction, are designed to throw light upon the real intention of the testator, prominent among which are these: that the words in a will are presumed to have been used in their primary and ordinary sense; that of two reasonable modes of construction one of which will lead to intestacy and the other to a valid disposition the latter will be accepted; and that an estate or interest given is to be regarded as vested unless it clearly appears that a contingent estate or interest was intended.

The defendants-in-error base their claim to the land in dispute upon the theory of the invalidity of the will as applied to the real estate in Hawaii, the contentions of their counsel being, in brief, first, that the beneficial interests given by the will subsequent to the death of the testator's widow have not vested and cannot vest either as legal or equitable estates until after a complete and final division of the estate into three equal parts by the trustees under the directions contained in clause "(b)," and that since these future interests, according to the terms of the will, must remain contingent until the completion of the

partition which would require an indefinite length of time to effect, they may not become vested until a period beyond the limit allowed by the rule against perpetuities and are therefore void, and, secondly, that the trust scheme of the testator having been "fatally mutilated and frustrated" by the decision of the California supreme court, the trust should be held void as to the remaining fragment of the trust estate also, and therefore there is an intestacy as to the real estate in Hawaii.

It is apparent that the ultimate conclusion to be reached by this court upon the questions presented here may lead to a result different from that introduced by the decision of the supreme court of California without questioning in any way the correctness of that court's decision upon the questions disposed of by it under the law of California.

The testator, after declaring all his estate to be the community property of his wife and himself (which, by the way, was not the fact as to his Hawaiian property) devised and bequeathed to his trustees all his estate, real, personal and mixed, wherever situate and however held, the same being subject to his testamentary disposition, in trust to (a) pay the net income thereof to his wife during the term of her natural life; (b) upon the death of his wife to divide said estate into three equal parts, when one of said equal third parts shall be forthwith assigned, transferred, set over and delivered by the trustees to his son Claus A., same to be and become his absolutely and forever, and another of said parts shall be forthwith assigned, transferred, set over and delivered by the trustees to his son Rudolph, same to be and become his absolutely and forever; and (c) to pay the net income from the remaining equal third part of the estate to his daughter Emma C. Ferris during her natural life, and upon her death to dispose of the principal as directed. Giving to the words used by the testator their ordinary and natural import it seems clear to us that his intention was not to give his sons immediate legal estates in the respective third parts of the property, but was to pass the legal title to the whole of the

estate to the trustees upon trust to pay the income to his wife during her lifetime if she should survive him and on her death (or on his death in case he should survive her) to divide the estate into three equal parts and to assign, transfer and deliver to each of the two sons one of such parts. The words "assign," "set over" and "deliver" are appropriate words for the passing of title to personal property, and the word "transfer" is as broad, if not broader, than "convey" and is appropriate for the passing of title to real as well as personal property. *Estate of Spreckels,* 162 Cal. at p. 572; *In re Thompson's Estate,* 1 N. Y. S. 213, 215; *Matter of Coolidge,* 83 N. Y. S. 299, 305; *Whalon* v. *Canal Co.,* 11 Wyo. 313, 347; *Lembeck etc. Brewing Co.* v. *Kelly,* 63 N. J. E. 401, 408; *Lambert* v. *Smith,* 9 Ore. 185, 193. And, in other connections, the word "transfer" has been given a wide meaning, thus, under the bankruptcy act, "a transfer of property includes the giving or conveying anything of value." *Pirie* v. *Chicago T. & T. Co.,* 182 U. S. 438, 443. The express direction to the trustees is to "divide said estate," and the assignment and transfer to each son is directed to be made "by my said trustees." The gift contained in clause "(c)" to the testator's daughter is not of a third of the net income of the whole estate but of "the net annual income derived from the remaining equal third part of my estate." All this, we think, goes to show that the trustees took the legal title with important powers, and that the contention of the defendants-in-error that clause "(b)" imposed upon the trustees the active duty to divide the estate into three equal parts and to convey one of such parts in severalty to each of the two sons is sound, though we are not required to specifically pass upon the contention of the plaintiffs-in-error that if conveyances are required to be made by the trustees to each of the sons individually those conveyances may be of undivided third parts of the estate. It is unnecessary to consider in this case any question as to how the trustees of this estate are to perform the duties imposed upon them by the will.

We do not sustain the further contention of the defendants-in-error that the equitable interests thus given to the two sons were intended to be contingent upon the division and conveyance of the property. We find nothing in the will which discloses an intention on the part of the testator that these interests should be or remain contingent, if at all, beyond the lifetime of his widow, she surviving him. There is no interregnum, the direction being to divide the estate "upon the death of my said wife" and to "forthwith" assign and transfer the equal third parts to each of the sons. There is no mention of the income which would accrue pending the division and transfer. No provision was made for the possible case of the death of either of the sons after the death of Mrs. Spreckels and before division and transfer. And as the only provision made for Mrs. Ferris is that contained in clause "(c)" it would be an unreasonable view to take that the testator intended that her right to an income from the estate was to be postponed until a physical division of the whole estate could be effected, yet if clause "(b)" gave only such contingent interests to the sons it would follow that the daughter's interest under clause "(c)" was likewise contingent. The directions to divide and to assign and transfer, and the declaration that the equal third part shall "be and become" the absolute property of the sons relate to the event of the death of the wife, she surviving the testator. The two sons having survived their mother it is of no practical importance whether the interests given them under clause "(b)" are to be regarded as having vested upon the death of the testator, defeasible in the event of death during the lifetime of the mother, as contended for by counsel for the plaintiffs-in-error, or whether, as opposing counsel claim, the interests of the sons remained contingent until the arrival of the time for the making of the division and transfer, which time they assume was not designated by the testator. The framing of this assumption has led counsel for the defendants-in-error to what we are satisfied is a wrong conclusion, for, as already shown, the will

has fixed the time for the division and transfer as on the death of the widow. Counsel invoke the rule that where there is no gift but in a direction to pay or convey futurity is annexed to the substance of the gift and vesting is suspended until the time shall arrive at which the payment or conveyance is to be made, but upon the application of that rule the interests of the sons must be held to have become vested on the death of their mother, that being the event designated in the will for the division and transfer. *Lewisohn* v. *Henry,* 179 N. Y. 352, 361, 362; *Andrews* v. *Rice,* 53 Conn. 566, 570. That the estate was a large one which it might take a long time to divide would not prevent the equitable interests given by clause "(b)" from vesting at the time specified. Those interests vested, in accordance with the manifest intention of the testator, in undivided shares pending the division and transfer by the trustees. *Manice* v. *Manice,* 43 N. Y. 303, 373.

Counsel for the defendants-in-error read clause "(b)" as though its first word were "after" instead of "upon," and then they argue that because the will does not prescribe a time at which the division and transfer of the property must take place within the period allowed by the rule against perpetuities for the vesting of estates the clause is void *in toto.* But, as counsel concede, if the interests given by that clause are not contingent upon a division and transfer of the property their entire claim with respect to this branch of the case must inevitably fall to the ground. They say in their brief, "We admit frankly that the rule against perpetuities would be satisfied by the vesting of the gifts in Claus A. and Rudolph Spreckels as either legal or equitable estates immediately upon the death of the widow, and that we must therefore prove that these gifts do not vest even as equitable estates until the completion of the division of the trust estate." Having found, as above stated, that the interests given by clause "(b)" became vested in the beneficiaries at least upon the death of the widow it is not necessary to further pursue the contentions of counsel upon this branch of the case.

Clause "(b)," in our opinion, does not violate the rule against perpetuities.

The final claim advanced by counsel for defendants-in-error is thus, in part, set forth in their brief: "Under the Spreckels will there is but a single trust operating upon all the property of the estate of every nature and description and 'wherever situate,' as a collective unity and involving a unitary scheme, the very essence of which requires the trustees" to administer the trust as directed by the will.  That the decision of the supreme court of California "has removed from the trust the bulk of the testator's property consisting of all the real estate situated in California and all the personal property wherever situated. * * * * The unitary and discretionary trust scheme of the testator having been fatally mutilated and frustrated by this decision, the provisions of the trust should not be enforced as to the remaining fragments of the trust estate, that is, the Hawaiian realty, or the Hawaiian realty plus the realty, if any, situated elsewhere than in California and in Hawaii; there is, therefore, an intestacy as to the Hawaiian realty."  The contention, in a word, is that the beneficiaries named in clause "(b)" should, with reference to the real estate in Hawaii, including of course the land in dispute, take nothing under the will because the supreme court of California has held, with reference to the real estate in California, that they took by direct devises independent of any trust.  The statement of the proposition would seem to carry its own refutation.  To us it appears to be unjust, illogical and unsound.  If the trust should be held to be ineffective as to the Hawaiian realty for the reason assigned it would seem more reasonable to hold that the objects of the testator's bounty should take the property free of the trust than that they should not take under the will at all. However, we think a complete answer to the contention is found in the ruling made on the first point discussed in this opinion which followed the argument of counsel for the defendants-in-error wherein they invoked the "principle firmly established

that to the law of the state in which the land is situated we must look for the rules which govern its descent, alienation and transfer, and for the effect and construction of wills and other conveyances," and said that "the Hawaiian courts in passing upon the title to real estate situated in Hawaii are free to construe the Spreckels will as they think right despite the California decision." This principle, which, in practical application may sometimes bring about unforeseen consequences, followed to its logical conclusion in this case, requires us to uphold and give effect to the trust which the testator created, and which is valid under the law of this Territory and operative as to the land in dispute. The plaintiffs proved no right, title or interest in the land in question in themselves.

The judgment of the circuit court is vacated and set aside. Judgment for the defendants will be entered in this court.

*D. L. Withington* and *Henry Holmes* (*Castle & Withington* on the brief) for plaintiffs-in-error.

*R. B. Anderson* (*Prosser, Anderson & Marx* and *S. E. Hannestad* on the brief) for defendants-in-error.